177 S.W.3d 574 (2005)
In the Interest of D.R., A Minor Child.
In the Interest of G.R. and C.R., Minor Children.
Nos. 01-00-00582-CV, 01-00-00583-CV.
Court of Appeals of Texas, First District, Houston.
August 18, 2005.
*576 Shawn Casey, Shawn Casey & Associates, Leonard Sparks, III, Houston, TX, for Appellant.
Sandra D. Hachem, Senior Assistant County Attorney, Terry Lea Elizondo, Gene E. Gundersen, Assistant County Attorney, Houston, TX, for Appellee.
Panel consists of Chief Justice RADACK and Justices JENNINGS and HANKS.

OPINION ON REHEARING
TERRY JENNINGS, Justice.
We deny the appellee's motion for rehearing. TEX.R.APP. P. 49.3. We withdraw our July 7, 2005 opinion, substitute this opinion in its place, and vacate our July 7, 2005 judgment.
Appellants, Vernon Rocchi and Cynthia Raddatz, challenge the trial court's judgments, entered in two separate cases tried together, one before a jury and the other before the bench, granting sole managing conservatorship of their minor children G.R. and C.R. to the Texas Department of Protective and Regulatory Services (TDPRS)[1] (the "G.R. and C.R. case")[2] and their minor child D.R. to Tiffany Carnal (the "D.R. case").[3] In their sole issue in the G.R. and C.R. case, which was tried before the bench, appellants contend that the trial court erred in not submitting the case to the jury. In two issues in the D.R. case, which was tried before a jury, Rocchi contends that the trial court's submission of unnecessary evidentiary issues in the jury charge precluded the jury from appointing him as D.R.'s sole managing conservator, and the trial court made an impermissible comment on the weight of the evidence in the wording of its jury charge. We affirm the judgment entered in the G.R. and C.R. case, reverse the judgment entered in the D.R. case, and remand the D.R. case to the trial court for a new trial.

Factual and Procedural Background
TDPRS originally filed suit in the interest of G.R., C.R., and D.R., seeking, among other things, to be appointed as the sole managing conservator for all three children. The trial court subsequently severed the D.R. case from the G.R. and C.R. case. TDPRS filed an amended petition in the G.R. and C.R. case, identifying Raddatz as the mother and Rocchi as the biological father of G.R. and C.R. TDPRS also filed an amended petition in the D.R. case, identifying Brandy Campbell[4] as the mother and Rocchi as the biological father of D.R. In both cases, TDPRS alleged that *577 it would be in the best interest of all three children to appoint TDPRS as the children's sole managing conservator. Intervenor Tiffany Carnal, a former foster mother and possessory conservator of D.R., filed a petition in intervention in the D.R. case, seeking appointment as sole managing conservator of D.R.
By two separate orders dated November 17, 1999, the trial court set the G.R. and C.R. case and the D.R. case for trial on January 24, 2000. On November 29, 1999, appellants filed a jury demand styled with the cause numbers for both the G.R. and C.R. case and the D.R. case. However, only one jury fee was paid.
The trial of both cases commenced on January 24, 2000. In a pretrial conference concerning the appropriate number of jury strikes for each party, the following discussion took place:
[Trial Court]: We're only going to try one jury case. That's the A case and also 
[TDPRS]: But the evidence is going to be in that case.
[Trial Court]: I will consider the other non-A case, [G.R. and C.R.], is that true?
[TDPRS]: That's right.
[Trial Court]: And the A case that the jury will have, the A case, is [D.R.]
...
[Appellants]: As I understand it, Judge, as I understand it here, I represent the two respondents and I'm given three parties.
[Trial Court]: Okay. Who are the respondents in the [D.R.] case?
[TDPRS]: The father and the mother.
[Trial Court]: What are their names?
[Appellants]: Mr. Rocchi and Brandi Campbell.
. . .
[Trial Court]: There's two, right.
[Appellants]: That would be two in that case.
[Trial Court]: That's the only one being tried to the jury.
[Appellants]: Well, you said you were hearing evidence on that, right, and Ms. Raddatz is part of the other case.
[Trial Court]: Right, but that's not a jury case. I'm going to make the decision in that case.
[Appellants]: Yes, ma'am, but I would reurge the fact that I've got everybody trying to get us terminated.
The trial court, after deciding on the number of strikes to allocate to each side, stated, in its opening remarks to the venire panel: "We've brought you here this morning because we're going to select a jury to hear the case of In the Interest of [D.R.], a Minor Child." Appellants did not object to the trial court's statements that only the D.R. case would be submitted to the jury. Additionally, following voir dire, appellants submitted a jury strike list for the D.R. case, but did not submit a jury strike list for the G.R. and C.R. case. The jury was selected, and the two cases were tried simultaneously, one before the jury and the other before the bench. However, the cases were never consolidated.
During the charge conference, appellants argued, for the first time, that the G.R. and C.R. case should also be submitted to the jury. While appellants agreed with the trial court that only one jury fee had been paid, appellants argued that the jury demand was made "in the name of both cases." The trial court reviewed the file, and confirmed that only one fee had been paid. However, the trial court discovered that, despite its previous statements that the D.R. case would be tried to the jury, the jury fee had apparently been credited to the G.R. and C.R. case.
*578 In response to appellants' request for a jury trial of the G.R. and C.R. case, TDPRS argued that appellants had waived their right to a jury trial of the G.R. and C.R. case by not objecting to the court's statements at the beginning of the trial. The children's attorney ad litem also argued against submitting the G.R. and C.R. case to the jury, contending that he had conducted his voir dire questions, opening statements, and cross-examination based on his understanding that the jury was only considering the D.R. case. The trial court indicated that, in light of the fact that the fee had actually been credited to the G.R. and C.R. case, it would consider a request by appellants to submit the G.R. and C.R. case to the jury, but that it would not permit both cases to be submitted to the jury.
During the court's extended discussion of this issue, appellants never offered to pay a second jury fee. Instead, after arguing that both cases should be tried to the jury based on the payment of the single jury fee, appellants expressly elected to have the D.R. case submitted to the jury. Appellants' counsel stated on the record: "my clients are in the process of giving me written instruction to elect this to be a jury trial for [D.R.] if the court will permit it." The trial court agreed to permit appellants' election, and noted:
I think the agreement, not the agreement, but the intention all along as stated in voir dire and as stated among all of us whether [appellants' counsel] wants to portray this as an agreement or not, clearly the fact was discussed on numerous occasions that there was one jury fee paid that the case would be tried with regard to [D.R.]. If that's what we're going to do and they put in it writing, I don't have any problem with doing that because I think that's the way it should be done.
The court then conducted a formal charge conference. Appellants made several objections to the proposed charge, which were overruled by the trial court. Following the conference, the parties made their closing arguments and the trial court submitted the D.R. case to the jury. The jury charge contained the following four questions:
QUESTION 1. Do you find from a preponderance of the evidence that a parent intentionally used abusive physical force against a child, in the Rocchi home at any time during the period of January 25, 1997 until the present? Answer "YES" OR "NO"
Answer: ____
IF YOU ANSWERED "YES" TO THE FOREGOING QUESTION, SUCH ANSWER AND EVIDENCE MUST BE CONSIDERED IN ANSWERING QUESTION NO. 3.
QUESTION 2. Do you find from a preponderance of the evidence that there was a history or pattern of committing family violence in the Rocchi home at any time during the period of January 25, 1997 until the present? Answer "YES" OR "NO"
Answer: ____
If you answered "YES" to the foregoing question, go to and answer question no. 4. DO NOT ANSWER QUESTION 3. If you answer "NO" to the foregoing question, go to and answer question 3, BUT DO NOT ANSWER QUESTION 4.
Question 3. Who should be appointed Managing Conservator of the child [D.R.]? The Texas Department of Protective and Regulatory Services, or Vernon Kurtis Rocchi, or Tiffany Carnal. Answer by writing the name of one (1) of the above parties: __________.

*579 If you answered Question 3 do not answer question 4.
Question 4. Who should be appointed Managing Conservator of the child [D.R.]? The Texas Department of Protective and Regulatory Services, or Tiffany Carnal. Answer by writing the name of one (1) of the above parties: __________.
The jury answered yes to questions one and two, skipped question three, and answered question four by appointing Carnal as D.R.'s sole managing conservator. Based on the jury's verdict, the trial court entered an order appointing Carnal as sole managing conservator of D.R. and Rocchi as the sole possessory conservator of D.R. The court decided the G.R. and C.R. case, and appointed TDPRS as the sole managing conservator of G.R. and C.R. and Rocchi and Raddatz as the possessory conservators of G.R. and C.R.

The G.R. and C.R. Appeal
In the G.R. and C.R. case, appellants argue that the trial court abused its discretion in not submitting the case to the jury because a proper jury demand had been made in both cases, the granting of their demand would not have interfered with the handling of the court's docket or necessitated a continuance, and no harm would have occurred to the other parties.
We review the trial court's denial of a jury demand for an abuse of discretion. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex.1996). In conducting an abuse of discretion review, we examine the entire record. Id. We will find an abuse of discretion only when the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. Id.
The United States and Texas Constitutions guarantee the right to trial by jury. See U.S. CONST. art. III, § 2; TEX. CONST. art. I, § 15. However, in order to be entitled to a trial by jury, a party must file a written request for a jury trial and pay a jury fee a reasonable time before trial. TEX. CONST. art. V, § 10 (stating that "no jury shall be empaneled in any civil case unless demanded by a party to the case, and a jury fee be paid by the party demanding a jury, for such sum, and with such exceptions as may be prescribed by the Legislature"); TEX.R. CIV. P. 216 (stating that a jury fee "must be deposited ... within the time for making a written request for a jury trial"). Appellants contend that they perfected their right to a jury trial of the G.R. and C.R. case because they timely filed a jury demand. TDPRS contends that appellants did not perfect their right to a jury trial of the G.R. and C.R. case because appellants paid only one jury fee, and appellants specifically elected to apply that fee to the D.R. case. TDPRS further contends that appellants waived their right to a jury trial of the G.R. and C.R. case.
The record establishes that appellants did not properly perfect their right to a jury trial in both cases. Following the discussion during the charge conference concerning whether the single jury fee should be credited to the D.R. case, the G.R. and C.R. case, or both cases, appellants specifically elected to proceed with a jury trial of the D.R. case. Appellants never tendered, or offered to tender, a second jury fee to apply to the G.R. and C.R. case. While both cases were tried together, they were never consolidated, and none of the parties ever sought consolidation. Appellants were thus not entitled to a jury trial in the G.R. and C.R. case.
We recognize that, even when a party does not timely pay the jury fee, a trial court should accord the right to jury trial if it can be done without interfering *580 with the court's docket, delaying the trial, or injuring the opposing party. Gen. Motors Corp. v. Gayle, 951 S.W.2d 469, 476 (Tex.1997); Dawson v. Jarvis, 627 S.W.2d 444, 446-47 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.). For example, in Dawson, on the morning of the trial, the trial court discovered that, though the parties had timely requested a jury, neither party had paid a jury fee. Id. at 446. The trial court refused to conduct a jury trial even though both attorneys were ready and prepared to proceed with a jury trial, the parties and witnesses had been advised that there would be a jury trial, the court personnel had prepared for a jury trial, three docket control orders had indicated that there would be a jury trial, a jury panel was available to hear the case, and one of the parties offered to pay the jury fee before commencement of the trial. Id. at 446-47. Based on these facts, this Court determined that the trial court abused its discretion in denying the parties their right to a jury trial. Id.
Here, however, appellants never offered to pay a second jury fee. Also, appellants have not demonstrated that a jury trial of the G.R. and C.R. case would not have interfered with the court's docket, delayed the trial, or prejudiced the other parties. Id. Appellants did not object to the bench trial until the charge conference, after the jury had been selected and all the evidence had been presented. The other parties had conducted voir dire and presented evidence with the understanding that only the D.R. case would be submitted to the jury. This fact is supported by the attorney ad litem, who informed the court that he opposed submitting the G.R. and C.R. case to the jury because he had conducted his voir dire questions, opening statements, and cross-examination of witnesses with this understanding. Accordingly, we hold that the trial court did not abuse its discretion in denying appellants' request for a jury trial of the G.R. and C.R. case.
Furthermore, we note that, even assuming that appellants were entitled to a jury trial of both cases, a perfected right to a jury trial in a civil case may be waived by a party's failure to act when the trial court proceeds with a bench trial. See, e.g., In re A.M., 936 S.W.2d 59, 61 (Tex.App.-San Antonio 1996, no writ); Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assurance Co., 875 S.W.2d 385, 387-88 (Tex.App.-Dallas 1993, no writ). In order to preserve a trial court's error in conducting a bench trial despite a party's perfected right to a jury trial, the party must timely object to the trial court's action or affirmatively indicate that it intends to exercise its right to a jury trial. Id. Here, when the trial court stated, during both the pretrial conference and the voir dire, that only the D.R. case would be tried to the jury, appellants did not object to the trial court's statements or indicate affirmatively that they possessed a "perfected" right to a jury trial in both cases. Instead, when the trial court explained that the G.R. and C.R. case would be tried to the bench, appellants responded, "Yes ma'am." Furthermore, appellants filed a jury strike list only in the D.R. case, not the G.R. and C.R. case. Appellants' objection to the bench trial of the G.R. and C.R. case, made for the first time during the charge conference, was not timely.
We overrule appellants' sole issue in the G.R. and C.R. case.

The D.R. Appeal
In his first and second issues in the D.R. case, Rocchi contends that the trial court's submission of unnecessary evidentiary issues in the jury charge precluded the jury from appointing him as the sole managing conservator of D.R., and that the trial court made an impermissible comment on *581 the weight of the evidence in the wording of the questions contained in the jury charge.
A trial court has broad discretion in submitting jury questions, and we review a complaint regarding the submission of jury questions for an abuse of discretion. See Rosell v. Cent. West Motor Stages, Inc., 89 S.W.3d 643, 653 (Tex.App.-Dallas 2002, pet. denied); Varme v. Gordon, 881 S.W.2d 877, 881 (Tex.App.-Houston [14th Dist.] 1994, writ denied). This discretion is subject to the requirement that the questions submitted must fairly place the disputed issues before the jury. Id. Error in the jury charge is only reversible if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. TEX.R.APP. P. 44.1; Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex.2003).
Rocchi asserts that the only controlling issue in the case was who should be appointed conservator for D.R. and that whether there was a history or pattern of family violence in the Rocchi home during the two years preceding the suit was merely an evidentiary issue. Rocchi further contends that, while the Texas Family Code creates a presumption that it is not in a child's best interest to appoint a parent with a pattern or history of family violence as the child's sole managing conservator, this presumption is rebuttable. Rocchi argues that the jury charge improperly precluded his being named as D.R.'s sole managing conservator upon a finding by the jury of a pattern or history of family violence in the Rocchi home.
TDPRS argues that, by agreeing to the preliminary language of the charge, including certain instructions, Rocchi agreed to the application of the law that made a finding of family violence a controlling and ultimate issue. TDPRS further argues that Rocchi failed to preserve his complaints about the charge for appellate review because he did not obtain rulings on his objections and because he did not make the specific objections that are being raised on appeal.
The version of section 153.004 in effect at the time of trial stated, in pertinent part:
(a) In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.
(b) The court may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child.
. . .
(d) The court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit, unless the court:

(1) finds that awarding the parent access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child; and
(2) renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim *582 of family violence committed by the parent....
Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 147, amended by Act of May 17, 1999, 76th Leg., R.S., ch. 787, § 3, 1999 Tex. Gen. Laws 3411, 3412, amended by Act of May 26, 1999, 76th Leg., R.S., Ch. 774, § 1, 1999 Tex. Gen. Laws 3394, 3394, amended by Act of May 17, 2001, 77th Leg., R.S., ch. 586, § 1, 2001 Tex. Gen. Laws 1119, 1119 (current version at TEX. FAM.CODE ANN. § 153.004 (Vernon 2004-2005) (emphasis added)).[5]
Nothing in section 153.004 automatically precluded Rocchi from being appointed as D.R.'s sole managing conservator upon a showing of a history or pattern of abuse or family violence. Id.[6] Moreover, section 153.004(d) indicates that, even after a jury finding of family violence, Rocchi could still have been permitted "access" to D.R. if such access would not have endangered D.R.'s physical or emotional welfare and would have been in D.R.'s best interest. Id.[7] Yet, question two instructed the jury that if it found, by a preponderance of the evidence, that there was a history or pattern of committing family violence in the Rocchi home at any time during the period of January 25, 1997 until the present, it was to skip question three, which included Rocchi among the possible appointees to serve as D.R.'s sole managing conservator, and instead answer question four, which only listed Carnal or TDPRS as possible appointees as D.R.'s conservator. Contrary to the plain language of the Texas Family Code, the trial court's charge to the jury precluded the jury, once it made an affirmative finding on question two, from considering whether Rocchi should have been appointed as D.R.'s sole managing conservator. We hold that the trial court erred in submitting question two to the jury and predicating question three so that the jury could answer that question only if it answered question two in the negative.[8]
*583 TDPRS argues that Rocchi waived his right to complain about these questions by agreeing to certain instructions contained in the jury charge. However, the jury charge merely contained instructions that were consistent with sections 153.004(a) and (d). In accordance with section 153.004, the court instructed the jury that it was required to consider evidence of the intentional use of abusive physical force in appointing D.R.'s sole managing conservator and that a parent with a history or pattern of committing family violence was precluded from having access to D.R., unless such access would not endanger D.R. and would be in the best interest of D.R. TEX. FAM.CODE ANN. 153.004(a), (d).[9]
These agreed preliminary instructions were consistent with the law; questions two and four were not. By agreeing to include these instructions, Rocchi did not agree that the jury's right to answer question three should be predicated upon a negative answer to question two.[10]See Washington v. Reliable Life Ins. Co., 581 S.W.2d 153, 160 (Tex.1979) (remanding case for new trial because conditioned question was not reached by jury); Varme, 881 S.W.2d at 881 (holding trial court improperly conditioned submission of cause of action in jury charge).
Moreover, we must reject TDPRS' argument that Rocchi failed to preserve this issue for our review. Rocchi made the following objections during the charge conference:
[Rocchi]: Judge, Question 1[11] and Question 2 actually are matters that are evidentiary but not decisive with regard to Question 3.
[Trial Court]: Well, I disagree with that.
[TDPRS]: Yes, ma'am. And because  even if the jury found that there was an intentional use of abusive physical force, the jury could still find that now a period of time in excess of a year later that it's in the best interests for the child to be placed back in the Rocchi home.
[Trial Court]: No, I disagree with you Mr. Lee.
. . . .
[Rocchi]: We object to having Question No. 3 being predicated upon an answer to Question 1 because Question No. 1 does not leave open for the jury *584 a finding of rehabilitation and the best interests of the child. We object to Question No. 3 being predicated upon Question No. 2 because Question No.  the predications does not leave open for to the jury the possibility of finding that there has been a rehabilitation and that it's now in the best interests of the child to be with the Rocchis. And we object finally once again to Question No. 4 because it constitutes a comment upon the weight of the evidence and we have objected to the  respectfully objected to the Court's jury charge.
The trial court expressly overruled Rocchi's objections when it stated its "disagreement" with his objections. Additionally, because the trial court submitted the charge without making any changes after Rocchi objected, we consider his objections to have been overruled. See Acord v. Gen. Motors Corp., 669 S.W.2d 111, 114 (Tex.1984); Wal-Mart Stores, Inc. v. Redding, 56 S.W.3d 141, 150 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); see also TEX.R. CIV. P. 272. Moreover, Rocchi's objections at trial were specific and clearly identified the error and the grounds for his complaint. TEX.R. CIV. P. 274. Rocchi specifically stated in his objections that the evidentiary issues raised by question two were "not decisive" on question three and that the structure of the charge improperly precluded the jury, after finding of a pattern or history of family violence in the Rocchi home, from considering whether to appoint Rocchi as D.R's sole managing conservator based on evidence that Rocchi had been "rehabilitated" and that it was in D.R.'s best interest. These objections are substantively identical to those being raised on appeal.
Having held that the trial court erred in submitting question two to the jury and predicating that the jury could answer question three only if answered question two in the negative, we further hold that the error constitutes reversible error, because it probably caused the rendition of an improper judgment by precluding the jury from even considering whether Rocchi should have been appointed as D.R.'s sole managing conservator.
Accordingly, we sustain Rocchi's first and second issues in the D.R. case.

Conclusion
We affirm the judgment of the trial court with regard to the G.R. and C.R. case, and reverse the judgment of the trial court with regard to the D.R. case. We remand the D.R. case to the trial court for a new trial.
NOTES
[1] The name of the agency has changed to the Texas Department of Family and Protective Services effective September 1, 2003. See Act of June 2, 2003, 78th Leg., R.S., ch. 198, §§ 1.01(b)(4)(J), 1.27, 2003 Tex. Gen. Laws 611, 641, 729.
[2] Trial court cause number XXXX-XXXXXJ; appellate cause number 01-00-00583-CV.
[3] Trial court cause number XXXX-XXXXXJA; appellate cause number 01-00-00582-CV.
[4] Campbell is not a party to this appeal.
[5] The versions of subsections (a) and (d) of section 153.004 in effect at the time of trial remain unchanged. However, subsection (b) was amended in 2001, and citation to the official sessions laws is included to reflect the amendment in 2001.
[6] The amended version of section 153.004(b) makes clear that there is a rebuttable presumption that the appointment of a parent as the sole managing conservator is not in the best interest of the child if there is credible evidence of a history or pattern of past or present child neglect, or physical or sexual or abuse. TEX. FAM.CODE ANN. § 153.004(b) (Vernon Supp.2004-2005). The amended version provides guidance to courts on how to consider evidence of abuse when appointing a sole managing conservator. The statute in effect at the time of trial provided virtually no guidance to courts on how to handle this type of evidence.
[7] The jury charge included a list of 22 nonexclusive factors that the jury could consider in determining D.R's best interest. For example, the jury was entitled to consider the plans for the child by those seeking custody, the stability of the home, the willingness and ability of the child's parents and family to seek out, accept and complete counseling services, and the availability of an adequate social support system consisting of an extended family and friends.
[8] We note that the current Texas Pattern Jury Charges provide that a trial court should simply ask the jury to answer the question, "Who should be appointed sole managing conservator of [the minor child]." Texas Pattern Jury Charge 216.2A, Family Law, 3d ed. (2003). The Texas Pattern Jury Charges further indicate that a trial court should only address the issues referenced by the trial court in questions one and two with jury instructions. See Texas Pattern Jury Charge 215.2, Family Law, 3d ed. (2003) (instructing a jury that "In determining whether to appoint a party a sole or joint managing conservator, you shall consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit");Texas Pattern Jury Charge 215.4, Family Law, 3d ed. (2003) (instructing a jury that "a parent may not be allowed access to a child if the parent has a history or pattern of committing family violence during the two years preceding the date of the filing of the suit or during the pendency of the suit unless awarding access to the child would not endanger the child's physical health or emotional welfare and would be in the child's best interest.").
[9] We recognize that these instructions are not necessarily appropriate simply because they correctly state the law. See Maddox v. Denka Chem. Corp., 930 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1996, no pet.). However, we reject the argument that Rocchi's agreement to include the trial court's instructions precludes him from making the arguments that he now asserts on appeal. We also note that the trial court's instructions, which were based on sections 153.004(a) and (d) of the Texas Family Code, are substantially similar to instructions set forth in the Texas Pattern Jury Charges. See Texas Pattern Jury Charge 215.2 and 215.4, Family Law, 3d ed. (2003).
[10] Rocchi does not challenge the jury's finding on question two.
[11] Rocchi does not challenge question one on appeal. Furthermore, question one was consistent with the law in that it properly instructed the jury to merely consider a finding of intentional use of abusive physical force against a child in the appellants' home in appointing TDPRS, Rocchi, or Carnal as D.R's sole managing conservator. TEX. FAM.CODE ANN. § 153.004(a).